# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# SOUTHWESTERN DIVISION

| | |
|---|---|
| UNITED STATES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 15-05008-01-CR-SW-RK |
| | ) |
| MICHAEL DOUGLAS PETERSON, | ) |
| | ) |
| Defendant. | ) |

## REPORT & RECOMMENDATION OF U.S. MAGISTRATE JUDGE

Pursuant to 28 U.S.C. § 636(b), and Rule 72.1 of the Local Rules for the United States District Court for the Western District of Missouri, the above-styled criminal action was referred to the undersigned for preliminary review. (Doc. 5). The Grand Jury returned indictments of: (1) attempting to employ, use, persuade, induce, entice, and coerce a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct, in violation of 18 U.S.C. § 2251(a) and (e); and (2) using the internet and cellular telephone network to knowingly persuade, induce, and entice an individual whom he believed to be less than eighteen years of age, to engage in sexual activity, in violation of 18 U.S.C. § 2422(b). (Doc. 4). Defendant Michael Douglas Peterson ("Peterson") then filed two motions. (Docs. 48 and 49). In his Motion for Disclosure of Grand Jury Transcripts, Peterson requested disclosure of the grand jury transcripts pursuant to Fed. R. Crim. P. 6 and 16. (Doc. 49). Peterson also filed a Motion to Dismiss the Indictment due to the spoliation of evidence by the Government. (Doc. 48). On May 25, 2017, this Court held a hearing on these matters. (Doc. 68). Defendant was present at the hearing with his attorney, David Mercer. (*Id.*) Ami Miller, Assistant United States Attorney, represented the United States. (*Id.*) During the hearing, the Court received evidence and heard

testimony from: James Smith, an officer with the Cassville, Missouri, Police Department assigned full time to the Southwest Missouri Cyber Crimes Task Force; and Troy Schnack, the Computer System Administrator for the Federal Public Defender's Office. For the reasons set forth below, it is hereby **RECOMMENDED** that Defendant's Motions, (Docs. 48 and 49), be **DENIED**.

## Background

On March 20, 2014, officers of the Cassville, Missouri, Police Department received a report regarding Autumn Hawkins ("Hawkins"), then 15 years old, having sexual contact with Defendant Peterson, then 31 years old.[1] (Doc. 68). As part of an investigation of Peterson, Cassville officers seized Hawkins's cell phone that same day. (*Id.*) Officer James Smith of the Cassville Police Department then took the phone to the Joplin, Missouri, Police Department Cyber Crimes Lab, where he examined it using Cellebrite.[2] (*Id.*)

Officer Smith found 26 images of Peterson contained on Hawkins's cell phone. (*Id.*) These images include headshots of Peterson, as well as close-ups of a nude penis, presumably that of Peterson. (Exs. 1-26).[3] Many of these images feature sexual text banners overlaying Peterson's face or penis. (*Id.*) Officer Smith also found a text-message correspondence between Hawkins (or at least a user of Hawkins's cell phone) and a contact labelled "Dylannnnn♥♥." (Doc. 68; Ex. 27). This correspondence included approximately ten text messages in which the sender, from Hawkins's phone, mentioned Peterson by name. (Doc. 68; Ex. 27). Messages such as "Michael Douglas, please answer," suggested to law enforcement that the contact "Dylannnnn♥♥" was actually Defendant Peterson. (Ex. 27). The correspondence also included

---

[1] As discussed later, during a subsequent interview in Tennessee, Hawkins recanted her statements made to Cassville police officers that she had had sexual intercourse with Peterson. (Doc. 68).
[2] Cellebrite is hardware that transfers data from a cell phone to a computer. (Doc. 68).
[3] The Court admitted Exhibits #1 through #26 into evidence over Defense Counsel's objection. (Doc. 68).

2

sexually explicit messages, *e.g.*, "I want you back inside me back on top of me, me back on top of u [sic]." (*Id.*) Although Officer Smith limited his search to Peterson connections, he stated that he did not find anything on the phone that he believed to be exculpatory in nature. (Doc. 68).

Officer Smith and other investigating officers then created a physical image of the phone, which they stored on a network storage device located in the Joplin Police Department Cyber Crimes Lab.[4] (*Id.*) When Hawkins's father asked to get the phone back, Lt. Boyd of the Cassville Police Department wiped the phone's contents and returned the device to him. (*Id.*) According to Officer Smith, Lt. Boyd wiped the phone in accordance with the Southwest Missouri Cyber Crimes Task Force's standard procedure. (*Id.*)

In July 2014, Officer Smith received notice that the network storage device had crashed. (*Id.*) As a result of the crash, police lost the image of Hawkins's cell phone, along with mirror images of other phones. (*Id.*) Officer Smith testified that no one in law enforcement purposefully destroyed or crashed the network storage device. (*Id.*) Moreover, per standard protocol of the Joplin Police Department at the time, law enforcement had no back up of the hard drive when it crashed. (*Id.*) Resultantly, all that remains from Hawkins's cell phone is data that the investigating officers hand-picked, which includes thumbnails of certain images and copies of the text conversation between Hawkins's phone and the contact "Dylannnnn♥♥." (*Id.*) Troy Schnack, Defendant's witness at the hearing, testified that without the phone, he could not say exactly what, if anything, on the device might be exculpatory. (*Id.*)

After the network storage device crash, officers located Peterson residing in Tennessee with the victim and her mother. (*Id.*) On August 15, 2014, Hawkins admitted to sending the text messages to the contact "Dylannnnn♥♥," but denied any sexual contact with Peterson. (*Id.*) The

---

[4] A physical image of a cell phone is a bit-for-bit copy of the device. (Doc. 68).

3

police then found and arrested Peterson in January 2015. (*Id.*) In a post-*Miranda* statement, Peterson admitted to having had sexual contact with Hawkins while in Tennessee. (*Id.*) Peterson further stated that he had communicated with Hawkins via a cell phone. (*Id.*)

Unable to locate Peterson's cell phone, Officer Smith turned to Peterson's Snapchat account because he believed that the images of Peterson he had found on Hawkins's phone were screenshots from her Snapchat application.[5] (*Id.*) Officer Smith provided Snapchat with the phone number for the contact "Dylannnnn♥♥," as well as the email address that the sheriff's office had provided for Peterson. (*Id.*) Based on this information, Snapchat returned the username "Therooster1970." (*Id.*) Snapchat's records indicated that "Therooster1970" had communicated with the user "Auttyboo1998"—a username similar to an email address Hawkins had used on her cell phone, Auttyboo98@gmail.com. (*Id.*)

## Discussion

**I. Defendant has failed to show a particularized need or a Sixth Amendment violation, so the Court should deny his Motion for Disclosure of Grand Jury Transcripts.**

### Motion for Disclosure of Grand Jury Transcripts

**A. Defendant has failed to allege a particularized need for the transcripts that outweighs the policy of secrecy in grand jury proceedings, so the Court should not compel release of grand jury materials.**

In his Motion for Disclosure of Grand Jury Transcripts, Defendant Peterson argues that he has a particularized need for the transcripts. (Docs. 49 & 61). Specifically, Defendant claims that because the server crashed prior to the grand jury proceedings, any law enforcement officers or cyber experts who testified before the grand jury would have based their testimony on hearsay summaries alone. (Doc. 49). Further, Defendant asserts that the unilateral discretion of the

---

[5] Snapchat is a smartphone application allowing users to send each other images that become encrypted and disappear after a fixed period of time. (Doc. 68). A screenshot takes a picture of whatever is displayed on the screen at the time. (*Id.*)

4

investigating officers limited these summaries, and that the summaries were based on incomplete and non-intact evidence. (*Id.*) Defendant also speculated as to whether the Government represented to the Grand Jury that it still had possession of the device or its contents, and whether the Government disclosed that officers had wiped the device and subsequently lost its contents. (*Id.*) Finally, Defendant argues that the Confrontation Clause of the Sixth Amendment of the United States Constitution requires disclosure of the grand jury transcripts. (Doc. 61). Here, Defendant asserts that he needs the transcripts to properly cross-examine the law enforcement officers involved in investigating Hawkins's cell phone. (*Id.*)

The Government responds that Defendant has failed to show a particularized need for the grand jury transcripts because he "has made no showing of any misconduct by the Government in the presentation of evidence to the grand jury." (Doc. 55). Accordingly, the Government contends that the Court should deny Defendant's Motion for Disclosure of the Grand Jury Transcripts. (*Id.*)

Although a defendant generally may not have access to grand jury materials, *see* Fed. R. Crim. P. 6, "[t]he court may authorize disclosure . . . of a grand-jury matter . . . at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." Fed. R. Crim. P. 6(e)(3)(E)(ii). To obtain grand jury transcripts, the defendant must show a "particularized need." *United States v. Broyles*, 37 F.3d 1314, 1318 (8th Cir. 1994). "[A] bare allegation that the records are necessary to determine if there may be a defect in the grand jury process does not satisfy the 'particularized need' requirement." *United States v. Warren*, 16 F.3d 247, 253 (8th Cir. 1994). The decision whether to compel release of grand jury transcripts is left "to the sound discretion of the trial judge" and may only be reversed for an abuse of discretion. *Id.* In deciding, the district judge must weigh

5

the moving party's alleged need against the long-established policy of secrecy in grand jury proceedings. *United States v. Procter & Gamble Co.*, 356 U.S. 677, 681-84 (1958). The district judge should specifically consider the chilling effect that releasing grand jury transcripts might have on future witnesses.[6] *Id.* at 681-82.

Here, Peterson has failed to allege a particularized need that outweighs the policy of secrecy in grand jury proceedings. Peterson first states that he wants the grand jury transcripts to determine whether the Government "inform[ed] the Grand Jury that its proffered testimonies were merely summaries of evidence that no longer exists." (Doc. 49). However, given that hearsay testimony is admissible at grand jury proceedings, *United States v. Rossbach*, 701 F.2d 713, 716 (8th Cir. 1983) (citations omitted), summaries of lost evidence could still lead to a valid indictment. Thus, Defendant's desire to know whether the Government relied on hearsay evidence in the grand jury proceedings fails to constitute a particularized need.

Peterson also argues that he needs the transcripts to see whether the Government disclosed to the grand jury that officers had lost the phone's contents. (Doc. 49). This argument does not establish a particularized need either, because the Government had other inculpatory evidence at the time of the grand jury proceedings. The Government's other evidence includes Defendant Peterson's admission that he had had sexual contact with Hawkins, text messages sent from Hawkins's phone, and images stored on Hawkins's phone. (Doc. 68). Because the grand jury could have indicted Defendant based on this information alone, Defendant's alleged "need"

---

[6] The Supreme Court has listed five reasons for the policy of secrecy in grand jury proceedings: "(1) [t]o prevent the escape of those whose indictment may be contemplated; (2) to insure the utmost freedom to the grand jury in its deliberations, and to prevent persons subject to indictment or their friends from importuning the grand jurors; (3) to prevent subornation of perjury or tampering with the witnesses who may testify before grand jury and later appear at the trial of those indicted by it; (4) to encourage free and untrammeled disclosures by persons who have information with respect to the commission of crimes; [and] (5) to protect innocent accused who is exonerated from disclosure of the fact that he has been under investigation, and from the expense of standing trial where there was no probability of guilt." *Procter & Gamble Co.*, 356 U.S. at 681 n. 6 (citing *United States v. Rose*, 215 F.2d 617, 628-29 (3d Cir. 1954)).

6

to see whether the Government informed the grand jury about the device's destruction does not outweigh the policy of secrecy. Hence, the Court should not order production of the grand jury transcripts based on Defendant's particularized need arguments.

**B. Refusing to release the grand jury transcripts would not violate Defendant's Sixth Amendment rights because Defendant will still have the opportunity to cross-examine investigating officers at trial.**

The Confrontation Clause provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. As its text suggests, the core right of the Confrontation Clause is the right to confront witnesses at trial. *California v. Green*, 399 U.S. 149, 157 (1970). Indeed, "[c]onfrontation: (1) insures that the witness will give his statements under oath—thus impressing him with the seriousness of the matter and guarding against the lie by the possibility of a penalty for perjury; (2) forces the witness to submit to cross-examination, the 'greatest legal engine ever invented for the discovery of truth'; [and] (3) permits the jury that is to decide the defendant's fate to observe the demeanor of the witness in making his statement, thus aiding the jury in assessing his credibility." *Id.* at 158. The constitutional right to confront witnesses does not encompass physical evidence. *United States v. Herndon*, 536 F.2d 1027 (5th Cir. 1976) (holding that law enforcement officers had not violated the defendant's Confrontation Clause rights by destroying already-analyzed moonshine samples on the ground that the defendant could still cross-examine the analyzer); *United States v. Sewar*, 468 F.2d 236 (9th Cir. 1972) (holding that officers did not violate the defendant's Confrontation Clause rights by disposing of a blood sample because the defendant could still cross-examine the technician who had examined the sample); *United States v. Brumley*, 466 F.2d 911 (10th Cir. 1972), *cert. denied*, 412 U.S. 929 (1973) (holding that the government had not violated the defendants' Confrontation Clause rights when the expert

7

destroyed paint particles, on the grounds that: (1) the defendants could cross-examine the expert, and (2) the particles were cumulative evidence).

Here, Defendant will have the opportunity at trial to cross-examine witnesses who examined the cell phone. Accordingly, despite the loss of the device's contents, the Government has not violated Defendant's Confrontation Clause rights. *See Green*, 399 U.S. 149; *Herndon*, 536 F.2d 1027; *Sewar*, 468 F.2d 236; *Brumley*, 466 F.2d 911. Because Defendant has failed to show either a particularized need for the transcripts or a violation of the Sixth Amendment, denial of his Motion for Disclosure of Grand Jury Transcripts, (Doc. 49), is appropriate.

## Motion to Dismiss the Indictment

**II.      The loss of the cell phone's contents does not amount to a due process violation warranting dismissal of the indictment because the evidence was not clearly exculpatory, there is no sign of bad faith on the part of the law enforcement, and there is no violation of the Best Evidence Rule.**

In his Motion to Dismiss the Indictment, Defendant contends that the loss of the phone's image constituted a due process violation, necessitating dismissal of the indictment. (Doc. 48). First, under the best evidence rule, Defendant argues that because the cell phone was the best evidence of Hawkins's communications with others, the loss of its contents precludes the Government from being able to establish the data by substituted means such as the Cellebrite report. (*Id.*) Second, under the clearly exculpatory standard, Defendant contends that the officers' failure to "take every precaution to ensure that the Device and its data w[ere] acquired and maintained in a manner that protects and preserved the evidence . . . constitutes a violation of the Defendant's right to due process." (*Id.*) Defendant looks to strengthen his case by adding that he cannot obtain comparable evidence now that the cell phone's image is lost. (*Id.*) Third, under the potentially exculpatory standard, Defendant claims that the officers acted in bad faith by wiping the phone and subsequently losing its potentially exculpatory contents. (*Id.*) In

8

particular, Defendant points to the officers' failure to maintain custody of the device or make a back-up of its contents as evidence of bad faith. (*Id.*)

The Government contends that the loss of the phone's contents does not amount to a due process violation. (Doc. 52). First, the Government argues that the phone's contents did not possess an exculpatory value that was apparent before their destruction, and that Defendant did not show he could not obtain the evidence by other means, so dismissal is unnecessary under the clearly exculpatory evidence test. (*Id.*) Second, the Government asserts that even if the Court finds the lost evidence potentially exculpatory, dismissal is still improper because Defendant failed to show that the law enforcement acted in bad faith. (*Id.*) Third, and finally, the Government claims that the best evidence rule does not necessitate dismissal of the indictment.

Due process requires the state to disclose to criminal defendants any exculpatory and material evidence. *California v. Trombetta*, 467 U.S. 479, 485 (1984). Defendants can thus make a motion to dismiss an indictment due to spoliation of evidence. *See, e.g., United States v. Bugh*, 701 F.3d 888 (8th Cir. 2012). However, the Eighth Circuit disfavors dismissing indictments. *United States v. Manthei*, 979 F.2d 124, 126 (8th Cir. 1992) (calling the "drastic step of dismissing an indictment" a "disfavored remedy").

To determine whether dismissal of an indictment is warranted due to spoliation of evidence, there are three separate tests. First, if the evidence will clearly exculpate the defendant, governmental destruction of it—whether done in good or bad faith—violates due process.[7] *Arizona v. Youngblood*, 488 U.S. 51, 57 (1988) (citing *Brady v. Maryland*, 373 U.S. 83 (1963)). Second, if the destroyed evidence will only potentially exculpate the defendant, the accused must show that the government destroyed the evidence in bad faith. *Id.* at 58. Third, if

---

[7] "Government," as used here, can refer to either law enforcement officers or the prosecution. *See, e.g., Trombetta*, 467 U.S. 479 (law enforcement); *Brady v. Maryland*, 373 U.S. 83 (1963) (prosecution).

9

the government has destroyed evidence that has no exculpatory value whatsoever, there is no due process violation.[8] *Trombetta*, 467 U.S. at 488. As a final note, even if the district court denies the motion to dismiss the indictment, nothing precludes a defendant from raising the same issue before the jury in an effort to create reasonable doubt. *See Youngblood*, 488 U.S. at 59. Thus, the issue here is whether the cell phone's contents were clearly exculpatory, potentially exculpatory, or non-exculpatory.

### A. The lost contents of Hawkins's cell phone are not clearly exculpatory because Defendant cannot point to anything specific that would have exculpated him.

The suppression of clearly exculpatory evidence—whether done in good faith or bad faith—violates due process. *Brady*, 373 U.S. 83. Clearly exculpatory evidence must "possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Trombetta*, 467 U.S. at 489. Evidence is clearly exculpatory if: (1) the evidence was favorable to the defendant; and (2) the evidence was material either to the defendant's guilt or punishment. *Id.* at 87. Material evidence has a reasonable probability of changing the outcome of the proceeding if disclosed. *United States v. Bagley*, 473 U.S. 667, 682 (1985). A reasonable probability undermines confidence in the outcome. *Id.*

The evidence at issue here is not clearly exculpatory because the phone's contents did not have an exculpatory value that was apparent prior to the server crash. At the hearing, Defendant's own witness could not say what, if anything, in the phone's contents might have exculpated Defendant. (Doc. 68). Moreover, everything that remains from the device is actually inculpatory, although the Court recognizes that the investigating officers hand-selected the surviving contents. (*Id.*) Still, the presence of so much inculpatory evidence on Hawkins's

---

[8] The Government has not raised this argument, so the Court will not address it.

phone makes it seem less likely that Defendant would have been able to find anything clearly exculpatory on the device. Because the destroyed information was not clearly exculpatory, the first test does not require disclosure.

**B. Defendant has failed to show that the law enforcement officers acted in bad faith in losing the phone's contents, so the potentially exculpatory test does not require dismissal.**

When destroyed evidence is only potentially exculpatory, a defendant must show that the government destroyed it in bad faith. *Youngblood*, 488 U.S. at 58. An officer only acts in bad faith when he purposefully destroys evidence to deprive the defendant of it. *See United States v. Hawkins*, 531 F. App'x 342, 344 (4th Cir. 2013) (quotation omitted); *United States v. Lee*, 399 F.3d 864, 865 (7th Cir. 2005); *United States v. Reichell-Hernandez*, No. CR-11-1155-TUC-CKJ, 2011 WL 4971693 at *4 (D. Ariz. Sept. 8, 2011) (citing *United States v. Barton*, 995 F.2d 935, 935-36 (9th Cir. 1993) (certiorari denied)), *report and recommendation adopted*, No. CR-11-1155-TUC-CKJ, 2011 WL 4971721 (D. Ariz. Oct. 19, 2011). Merely negligent destruction of evidence does not amount to bad faith. *Bugh*, 701 F.3d at 895. If the state destroys evidence in accord with its normal practice, or if destroyed evidence probably would not have exculpated the defendant anyways, a court is less likely to give a bad-faith inference. *Youngblood*, 488 U.S. at 56.

Here, Defendant has failed to show that the law enforcement officers acted in bad faith in losing the contents of Hawkins's cell phone. Although an officer did wipe the device, he only did so after officers had saved a mirror image of it on the station's server. (Doc. 68). Furthermore, the officer wiped the cell phone in accord with the police department's policy at the time, (*id.*), which weighs against a bad-faith finding. *See Youngblood*, 488 U.S. at 56. Additionally, Officer Smith testified that no officer intended to crash the server, and that when

11

the hardware did fail, police lost data from phones other than that of Hawkins. (Doc. 68). These facts suggest that law enforcement was not targeting Peterson when the server crashed. While Officer Smith agreed that it would have been a good idea to back-up the server, (*id.*), the failure to do so amounts at most to negligence, which falls short of bad faith. *See Bugh*, 701 F.3d at 895. Finally, given the existence of remaining inculpatory evidence such as the texts, the images, and Peterson's admission that he had had sexual contact with Hawkins, it seems unlikely that the destroyed evidence would have exculpated Defendant anyways. The fact that the destroyed evidence probably would not have exculpated Defendant hurts his bad-faith argument. *See Youngblood*, 488 U.S. at 56. Therefore, the Court should not find bad faith on the part of the law enforcement officers.

C. **The best evidence rule does not require dismissal of the indictment because the Government still has originals of the inculpatory evidence.**

Rule 1002 of the Federal Rules of Evidence provides that "[a]n original writing, recording, or photograph is required in order to prove its content unless these rules or a federal statute provides otherwise." Fed. R. Evid. 1002. Rule 1001(d) defines an "original":

> An "original" of a writing or recording means the writing or recording itself or any counterpart intended to have the same effect by the person who executed or issued it. For electronically stored information, "original" means any printout—or other output readable by sight—if it accurately reflects the information. An "original" of a photograph includes the negative or a print from it.

Fed. R. Evid. 1001(d). Here, the officers retained images and text messages from Hawkins's cell phone. (Doc. 68). Under Fed. R. Evid. 1001(d), printouts of this electronically stored information are originals. Hence, the Best Evidence Rule does not require dismissal of the indictment.

Because the evidence is not clearly exculpatory, because Peterson did not provide sufficient evidence of bad faith on the part of the Government, and because there is no violation

12

of the best evidence rule, Peterson has failed to show why the Court should dismiss the indictment. This does not preclude Peterson from raising the evidentiary-loss issue at trial, however. *See Youngblood*, 448 U.S. at 59. Indeed, Peterson could argue that the cell phone contained exculpatory evidence that law enforcement lost in the server crash. Before the finder of fact is the proper place to raise this argument, though; not in a pretrial motion to dismiss the indictment. *See id.* As such, denial of Defendant's Motion to Dismiss is warranted.[9] [10]

### Conclusion

For the reasons stated, it is hereby **RECOMMENDED** that Defendant's Motion for Disclosure of Grand Jury Transcripts and Motion to Dismiss the Indictment, (Docs. 48 & 49), be **DENIED**.

/s/ *David P. Rush*
DAVID P. RUSH
UNITED STATES MAGISTRATE JUDGE

DATE: August 8, 2017

---

[9] *Brady*, 373 U.S. 83, deals with the intentional destruction of evidence. Here, law enforcement accidentally lost the evidence. As such, *Brady* does not apply to this case.
[10] For the reasons above, there is no violation of the Confrontation Clause here that warrants dismissal of the indictment.